# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5078 | **DATE** | 4/16/2003 |
| **CASE TITLE** | FEDERAL TRADE COMMISSION vs. OSI FINANCIAL SERVICES, INC., ET AL | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion (17-2) for judgment is denied. Motion (26-1) to dismiss is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 17 2003 | |
| ✓ | Docketing to mail notices. | | date docketed | 38 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**DOCKETED**

APR 1 7 2003

FEDERAL TRADE COMMISSION and
STATE OF ILLINOIS, ex rel. Attorney
General LISA MADIGAN,

        Plaintiffs,

        v.

OSI FINANCIAL SERVICES, INC., an
Illinois corporation, and MARK
DIAMOND, individually and as an officer
of OSI Financial Services, Inc.,

        Defendants.

No. 02 C 5078
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The FTC and Illinois have sued OSI Financial Services and Mark Diamond over

allegedly illegal loan practices. One count is under the FTC Act and the other under the Illinois

Consumer Fraud and Deceptive Business Practice Act. Defendants move to "dismiss" the state

law count. Count Two alleges acts with respect to four persons. I reiterate briefly.

A. In June 1999, a man who said he was Mark Diamond solicited Ivette Cruz to take out

a home equity loan which he could get -- a 30-year fixed rate whose monthly payments would

include payments for taxes and insurance. He gave her papers to sign which she did. The papers

had unfilled blanks. She did not see anything telling her the size of the payments or any other

details, i.e., term of loan, whether it was a balloon, what was the APR, what Diamond and/or the

home improvement company would get. Nor did he tell her it was not the kind of loan he

initially described to her. He did not give her a copy of the papers until weeks after the closing.

The payments did not include sums for taxes and insurance.



B. In December of 1998, Diamond solicited Virgie Brown to take a 15-year fixed-rate loan for low fees and, he said, he could refinance it at a lower rate within a year for no additional fees and the payments included taxes and insurance. The closing for her was like the closing for Ivette Cruz. In fact, the loan was a 15-year balloon, a $90,000 loan and $9,000 went to the mortgage broker and there was a prepayment penalty of $2,700 for any refinancing within three years. The payments did not include money for taxes and insurance.

C. In 1999, a home improvement company referred Lela Gill to Mark Diamond, who solicited her to take a loan which would pay for the improvements and also pay off her outstanding bills. At closing he told her and her husband it was a 30-year fixed rate. It was, in fact a 15 year balloon loan. Moreover, after deduction of broker's fees, the proceeds were insufficient to pay for the home improvements. So he offered to refinance for a larger amount, which was done on September 26th. He said it was a 30-year fixed and, if timely paid, a new loan with lower payments could be made. He did not tell them there was a prepayment penalty. Nor did he tell them it was a 15-year balloon. He did not give them copies of the papers until well after the closing.

D. In March 1999, Levester Gibbons called Mark Diamond, who offered him a 15-year loan that would be paid off at the end of the loan term. When Ms. Gibbons noticed the word "balloon" in the papers at the closing, Diamond stated it meant the loan payments decreased after the first few payments. The closing was on May 18, but the papers were dated May 13, and Diamond explained this by saying he was behind in his work and needed to catch up. The loan was for $70,000. A few months later, another person at OSI called with an offer to refinance with lower payments. Diamond came to Ms. Gibbons' home and suggested a larger loan of

2

$105,300, which would have lower payments than the current loan. At the closing, Ms. Gibbons did not see a monthly payment set forth in the papers, and she believed it was a 15-year fixed-rate loan, fully amortizing, with payments that would take care of taxes and insurance. In fact, the payments were higher, taxes and insurances were not included and the loans were balloon loans.

The reason I put quotation marks around the word "dismiss" is because the motion says that one cannot make the state law claim where the Federal Truth in Lending Act disclosures are made and "the factual allegations of Count II . . . . are directly contradicted by the deposition testimony of the four customers and the documents that they signed and acknowledged." This seems to invoke summary judgment rather than dismissal.

The defendants think that the allegations fail for particularity under Rule 9(b). There might be some force to this claim with respect to a detail or two, but as a whole it is quite wrong. Exact dates and places are alleged with respect to all four cases. And, at the minimum, there are allegations of the actual contents of the misrepresentations or omissions and to whom they were made or omitted. Of course, one can always make an "angels dancing on the head of a pin" sort of argument against any allegation, but the allegations here are far more detailed than those found in the reported cases that threw out fraud claims on 9(b) grounds. In the context of these allegations, failing to tell someone that the loan is a balloon loan, its payments will not cover taxes and insurance, and that there is a prepayment penalty may constitute fraud. I regard the defendants' argument as tongue-in-cheek, and I would rebuke them for it but for the fact that the Attorney General has made two tongue-in-cheek arguments of her own, both of which I reject.[1]

---

[1] The Attorney General says that pleading under the state law does not require compliance with Rule 9(a), but that is plainly wrong on the merits. If the state law requires a lesser standard, then the Attorney General can file in state court and gain the benefit of those procedural rules.

3

The second basic argument of defendants is that they complied with the disclosure requirement of the Truth in Lending Act and when this is done, it precludes the state law claim alleged here. There are cases where this is a good argument, but the complaint alleges non-compliance with TILA because (and I assume here that this is true) the written disclosures were incomplete at the time of the loan closing and were not provided until after the loan had closed. This may or may not be bad enough, but when combined with allegations of misrepresentations in soliciting the loan and at the time of closing the loan, the existence of TILA compliant papers signed by those who accepted the loans is not enough to destroy the case at the pleading stage.[2]

As to the summary judgment aspect of the motion to dismiss, I decline to dismiss, and I decline to convert the motion into a Rule 56 motion. I doubt that defendants would prevail, but even if they would, it would divert the case from what I regard as an appropriate course for the case–that is document discovery, depositions and routine discovery. I recognize that in some cases, a party is entitled to prompt disposition on summary judgment, but this is not one of those cases. Enough has been alleged to allow Count Two to go forward. I recognize that defendants would, in any event, have to defend their conduct on Count One, but there are valid policy

_____

She also says that the Attorney General is not to be bound in a case where it is seeking to enforce law and not act on behalf of an individual plaintiff. Personally I would not have thought that a defendant is generally entitled to fewer procedural protections when sued by the State than when it is sued by a private individual. Moreover, it is not entirely consistent with the stature of the chief legal officer of Illinois to seek excuses of this sort for its pleading failures, especially in a case where, on the whole, it has not failed in its pleading.

[2] The arguments offered by defendants to defeat the complaint on dismissal and summary judgment are redolent of the kinds of arguments that have been made for years under the unusual "innocent construction" libel doctrine memorialized in *John v. Tribune Co.*, 24 Ill.2d 437 (1962). It is not a particularly attractive legal doctrine if transplanted from its First Amendment media protection context to another that might be denoted as a mortgage broker protection context.

4

reasons to permit this case to go through at least some discovery before summary judgment is addressed on the state law claim.

ENTER:

James B. Zagel
United States District Judge

DATE: 16 April 2003